IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ABIRA MEDICAL LABORATORIES,   )
LLC, *d/b/a* GENESIS DIAGNOSTICS,   )
                                    )
    Plaintiff,                      )
                                    )
        v.                          )          Civil Action No. 3:25CV108 (RCY)
                                    )
ANTHEM HEALTH PLANS OF              )
VIRGINIA, INC.,                     )
*d/b/a* ANTHEM BLUE CROSS BLUE      )
SHIELD OF VIRGINIA, *et al.*,       )
                                    )
    Defendants.                     )
                                    )

**MEMORANDUM OPINION**

This is an ERISA and contract dispute action brought by Plaintiff Abira Medical Laboratories, LLC, *d/b/a* Genesis Diagnostics ("Genesis") against Defendant Anthem Health Plans of Virginia, Inc., *d/b/a* Anthem Blue Cross Blue Shield of Virginia ("Anthem"). The matter is before the Court on Defendant's Motion to Dismiss. The Motion has been fully briefed. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will deny the Motion to Dismiss with respect to Counts One through Three and Defendant's request for severance. The Court will grant the Motion to Dismiss with respect to Count Four, without prejudice.

**I. RELEVANT PROCEDURAL HISTORY**

Plaintiff filed its Complaint on February 11, 2025. ECF No. 1. After timely service and two extensions, Anthem filed a Motion to Dismiss the Complaint on May 7, 2025. Mot. Dismiss, ECF No. 18. On May 28, 2025, following a consented-to extension, Plaintiff filed a Memorandum in Opposition to Anthem's Motion to Dismiss. Resp. Opp'n, ECF No. 22. Anthem then filed a

Reply on June 10, 2025. Reply, ECF No. 23. Finding no oral argument to be necessary, the Court proceeds to disposition of the Motion on the briefs.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952. Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citing *Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

### III. FACTUAL ALLEGATIONS

Plaintiff is a medical testing business offering clinical laboratory, pharmacy, genetic, addiction rehabilitation, and COVID-19 testing services based on requisitions submitted by medical service providers on behalf of (as relevant here) Defendant's subscribers/members (hereinafter "insureds"). Compl. ¶ 15, ECF No. 1. These service requisitions contained an assignment of benefits ("AOB") provision and were executed by each insured for whom Plaintiff provided services. *Id.* ¶¶ 16–18. The AOB contained the following language:

> I hereby assign all rights and benefits under my health plan and direct payments be made to Genesis Diagnostics for laboratory services furnished to me by Genesis Diagnostics. I irrevocably designate authorize and appoint Genesis Diagnostics or its assigned affiliates as my true and lawful attorney-in-fact for the purpose of submitting my claims and pursuing any request, disclosure, appeal, litigation or other remedies in accordance with the benefits and rights under my health plan and in accordance with any federal or state laws. If my health plan fails to abide by my authorization and makes payment directly to me, I agree to endorse the insurance check and forward it to Genesis Diagnostics immediately upon receipt. I hereby authorize Genesis Diagnostics or its assigned affiliates to contact me for billing or payment purposes by phone, text message, or email with the contact information that I have provided to Genesis Diagnostics, in compliance with federal and state laws.

3

*Id.* ¶ 17.  Some of the insureds obtained their insurance policies through employee benefit plans regulated by the federal Employee Retirement Income Security Act (ERISA).  *Id.* ¶¶ 25–27, 37 (describing ERISA-governed benefits claims and non-ERISA governed claims).

Exhibit 1, attached to the Complaint, details Defendant's insureds to whom Plaintiff provided testing services, as well as the dates of services, the amounts billed for those services, ascension numbers, and policy identification and claim numbers.  *Id.* ¶ 18.  There are over 2,000 claims in the Exhibit.  *Id.* ¶ 50.  Plaintiff alleges that Defendant, in response to claims submitted under each insured's plan, "blatantly disregarded . . . express obligations to pay Plaintiff for services rendered."  *Id.* ¶¶ 19, 31, 33.  Defendant either wholly failed to respond to claims or employed a "contrived and meritless" rationale in rejecting them.  *Id.* ¶¶ 20–22.  Plaintiff alleges that it exhausted administrative remedies in pursuing payment.  *Id.* ¶ 30.  Defendant's rejection and/or underpayment of Plaintiff's claims resulted in compensatory, direct, or actual damages to Plaintiff in an amount not less than $2,898,730, in addition to all legal, equitable, consequential, and/or incidental damages to be determined by the trier of fact.  *Id.* ¶¶ 22, 58.

## IV. ANALYSIS

The Complaint asserts four claims seeking relief based on Anthem's alleged failure to compensate Genesis for laboratory services:  ERISA, Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Actual and Constructive Fraud.[1]  At a high level, Plaintiff argues that the assignment of benefits ("AOB") language executed by insureds in both ERISA and non-ERISA health plans created contractual obligations owed by Defendant to Plaintiff, and that by failing to honor such obligations, Defendant violated ERISA's statutory scheme as well as common law contract and fraud rules when it refused to pay in full for Plaintiff's

---

[1] This case is one of dozens Genesis has filed around the country since June of 2023, including approximately forty in the United States District Court for the District of New Jersey alone.  *See, e.g., Abira Med. Labs., LLC v. Allied Ben. Sys., LLC*, 2024 U.S. Dist. LEXIS 95563, at *1 (D.N.J. May 29, 2024) (describing case-filing landscape).

rendered services.  Compl. ¶¶ 27–28, 32–40, 48, 52–55.  Defendant moves to dismiss all four claims, arguing that Plaintiff fails to state a claim on every front.  Mot. Dismiss 9–12, 14–16.  For the ERISA claim specifically, Defendant also argues that Plaintiff lacks standing and/or a showing of administrative exhaustion.  *Id.* at 7–9, 11–12.  Finally, Defendant argues that Plaintiff improperly combines 2,170 benefits claims to form the basis for this lawsuit, and that if the Court otherwise finds that the action should proceed, the claims must be severed.  The Court will analyze the sufficiency of each claim in turn, before turning to the improper joinder argument.

## A.  ERISA Claim (Count One)

Plaintiff alleges in Count One that Defendant's non- or under-payment for services, flouting insureds' AOBs to Plaintiff, constitutes an ERISA violation.  Compl. ¶¶ 26–32.  Defendant argues in its Motion to Dismiss that Plaintiff failed to specify which ERISA provision Defendant allegedly violated, that Plaintiff lacks standing to make an ERISA-based challenge, that Plaintiff's failure to cite to specific ERISA-plan language entitling the participant or beneficiary to benefits warrants dismissal of the claim, and finally that Plaintiff has not pleaded facts to show the necessary administrative exhaustion.  *See generally,* Mot. Dismiss.  The Court addresses each argument in turn.

### 1. Specific ERISA Enforcement Provision

Defendant's first argument for dismissal of Plaintiff's ERISA claim is that Plaintiff fails to identify the specific provision of ERISA under which Plaintiff seeks to recover.  Mem. Supp. 13–14.[2]  The Court easily disposes of this argument, as the Fourth Circuit has made clear that "the failure specifically to identify the provision permitting recovery is not fatal."  *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citing *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883

---

[2] For this and all other briefs, the Court uses the pagination assigned by the CM/ECF system, and not that appearing on the briefs themselves.

F.2d at 325–26 (4th Cir. 1989)).  Moreover, the Complaint unambiguously states that it is an action

seeking to recover benefits due under Defendant's insureds' ERISA plans.  Compl. ¶ 28.  The

Complaint further points to 29 U.S.C. § 1132(e), which is the jurisdictional provision

accompanying claims seeking to recover benefits due under an ERISA plan pursuant to 29 U.S.C.

§ 1132(a), which in turn is the codification of ERISA § 502(a).  Thus the Court—and more

importantly, Defendant—are sufficiently on notice of the nature of Plaintiff's claim in Count One.

*Accord Reisch-Elvin v. Provident Life & Accident Ins. Co.*, 372 F. Supp. 2d 827, 831 (E.D. Va.

2005) ("[I]n the ERISA context, various courts have repeatedly concluded that, if the claim is

completely preempted by ERISA, a complaint states an ERISA claim without expressly pointing

to the ERISA statute when a plaintiff seeks to recover ERISA-governed benefits." (internal

quotations omitted) (collecting cases)).

    2. Pleading Derivative ERISA Standing

Defendant contends that, because Plaintiff is not "a participant or beneficiary" under an

ERISA plan, Plaintiff must rely on derivative standing to bring its claim, and further that, applying

a derivative standing theory, Plaintiff's claim fails because Plaintiff does not sufficiently plead

facts supporting the "existence and scope of a valid assignment" conferring standing.  Mot.

Dismiss 8.  Defendant continues by highlighting as insufficient Plaintiff's inclusion of a

"representative excerpt of the generic language of all assignments allegedly signed by Anthem's

members while at their doctors' offices."  *Id.* at 8–9.  The Court is not persuaded by these

arguments, and finds that Plaintiff has pleaded sufficient facts to assert derivative standing at the

12(b)(6) stage.

Under ERISA § 502(a)(1), a civil action may be brought by a participant or beneficiary to

"recover benefits due to him under the terms of his plan, to enforce his rights under the terms of

the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C.

§ 1132(a)(1).  "Although healthcare providers are generally not participants or beneficiaries under ERISA, '[a] healthcare provider may have derivative standing to sue under ERISA if the provider has a valid assignment of the participant's or beneficiary's right to payment of their medical benefits.'"  *W. Va. Reg'l Emergency Physicians, LLC v. Anthem Health Plans of Va., Inc.*, 2024 U.S. Dist. LEXIS 128948, at *14 (E.D. Va. July 22, 2024) (quoting *Zhang v. Cigna Healthcare, Inc.*, 2023 WL 3727936, at *2 (E.D. Va. May 30, 2023)).

The Fourth Circuit has not defined what constitutes a "valid" assignment for purposes of assessing derivative standing; the last time it appears to have even considered the concept was in 2008.  *See Brown v. Sikora & Assocs.*, 311 F. App'x 568, 570 (4th Cir. 2008) (noting that the Fourth Circuit had never before addressed the question of derivative standing for ERISA benefits but acknowledging that "sister circuits have consistently recognized such standing when based on the valid assignment of ERISA health and welfare benefits by participants and beneficiaries").[3]  In this void, courts within the Fourth Circuit have held that Plaintiffs generally need not plead specific language of assignment for purposes of showing derivative standing.  *E.g.*, *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC,* 2015 U.S. Dist. LEXIS 91689, at *77–78 (D. Md. July 15, 2015).

Federal district courts beyond the Fourth Circuit have clarified what constitutes a valid assignment in the ERISA context.  "[T]o make an effective assignment of a contract right, the owner of that right must manifest an intention to make a present transfer of the right . . . ."  *Abira*

---

[3] In *Sikora*, the Fourth Circuit ultimately rejected the claimed assignment of ERISA benefits at issue because it found that the plaintiff, Sikora, "claimed derivative standing not out of any concern with the participants' unpaid ERISA benefits, but in order to obtain federal subject matter jurisdiction over Sikora's independent state-law claims against [the defendant]," and so permitting derivative standing would not "further the purposes of the statute because it offers no benefits for the ERISA participants."  311 F. App'x at 571.  The Fourth Circuit contrasted this with the out-of-circuit cases wherein assignees (frequently health services providers) *had* been found to have derivative standing, where such assignees "could have sued the actual ERISA participants, who would then have clearly had standing to sue for the unpaid ERISA benefits."  *Id.*  Thus, the Fourth Circuit found that "permitting derivative standing in [those] cases would further the purposes of ERISA 'to protect the interests of participants in employee benefit plans and their beneficiaries.'"  *Id.* (quoting *Marks v. Watters*, 322 F.3d 316, 322 (4th Cir. 2003)).

*Med. Labs., LLC v. Bluecross Blueshield of Tenn., Inc.*, 2025 U.S. Dist. LEXIS 132756, at *7–8 (E.D. Tenn. May 28, 2025) (citing E. Allan Farnsworth, *Contracts*, § 11.3, p. 709 (3d ed. 1999)). And so, to survive a motion to dismiss, plaintiff-assignees should allege "specific factual allegations to render plausible their claim that the [a]ssignments they received from the [p]lan [p]articipants conferred them with the right to receive the full benefits of that [p]lan." *Dual Diagnosis Treatment Ctr., Inc. v. Horizon Blue Cross Blue Shield of N.J.*, 2022 U.S. Dist. LEXIS 71446, at *7–8 (D.N.J. Apr. 19, 2022) (quoting *NJSR Surgical Ctr., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 979 F. Supp. 2d 513, 522–23 (D.N.J. 2013)).

Here, Plaintiff is not a participant in or beneficiary of the pertinent health plans involved in this case, and so it must plausibly allege valid assignment to state its ERISA-based claim. *See W. Va. Reg'l Emergency Physicians, LLC*, 2024 U.S. Dist. LEXIS 128948, at *13 (quoting *Kearney v. Blue Cross & Blue Shield of N. Carolina*, 376 F. Supp. 3d 618, 625 (M.D.N.C. 2019)). The Court finds that it has done so by alleging the facts that (1) medical service providers submitted requisitions for lab services to Plaintiff, Compl. ¶ 15, (2) those requisitions contained an assignment of benefits from Defendant's insureds to Plaintiff, *id*. ¶ 16, (3) Defendant's insureds executed the assignment(s), *id.* ¶ 17, and (4) the assignments, per the quoted language in the Complaint, specifically assigned the right of payment and the right to pursue and collect such payments to Plaintiff, *id.* Applying the Fourth Circuit's reasoning from *Sikora*, *see supra* n.3, the Court finds that approving derivative standing here "further[s] the purposes of ERISA to protect the interests of participants in employee benefit plans and their beneficiaries," 311 F. App'x at 571 (internal quotations omitted), because to deny it would force Plaintiff to pursue litigation against each individual insured, who would then have to sue Defendant for unpaid ERISA benefits, resulting in a tidal wave of piecemeal litigation which would bog down courts across this country and in no way benefit the ERISA plan participants, *see id*. To the extent Defendant challenges

whether each insured listed in Exhibit 1 *in fact* executed the AOB quoted in the Complaint, such a question is appropriate for exploration during discovery—not for the Court to resolve at the pleadings stage.

### 3. Pleading an ERISA Claim

Building off its standing arguments, Defendant next argues that Plaintiff fails to plausibly allege the necessary elements of an ERISA § 502(a) claim insofar as Plaintiff fails to "allege (i) that it received valid assignments for benefits under an ERISA plan and (ii) that Anthem wrongfully denied benefits in violation of the terms of the ERISA plan." Mem. Supp. 17 (citing *Di Biase v. SPX Corp.*, 872 F.3d 224, 232–34 (4th Cir. 2017)). Specifically, Defendant argues that Plaintiff identifies neither the ERISA plans for which it obtained AOBs nor the specific provisions of such plans entitling it to the benefits it now claims. *Id.* Plaintiff disputes that, at the pleading stage, it is required to include such specifics. Resp. Opp'n 10–11.

To state a claim pursuant to ERISA § 502(a)(1)(B) for recovery of benefits, a plaintiff must plead (1) standing under ERISA, (2) the existence of an ERISA plan, and (3) a specific violation of such plan. *See Di Biase*, 872 F.3d at 233. The Court has already determined that Plaintiff has sufficiently alleged standing, *see supra* Part IV.A.2, and the Complaint alleges the existence of ERISA plans, *see* Compl. ¶¶ 25–26 ("Upon information and belief, Defendant's subscribers/members obtain insurance policies through the issuance of the Defendant's subscriber/member's Employer obtaining a policy of group health insurance in which Defendant's subscribers/members are a participant or, of which they are a beneficiary. Said policy is an employee benefit plan that is regulated by [ERISA]."). This leaves the third prong.

The Fourth Circuit has not defined the level of specificity required of an ERISA claimant, for purposes of articulating the violation giving rise to a claim, but in reciting how the plaintiff at bar satisfied the ERISA pleading standard in *Di Biase*, the Fourth Circuit took a high-level

approach.  *See* 872 F.3d at 233 ("Plaintiffs have pled that they are 'participants' in an employee welfare benefit plan, and that the reduction of retiree health care benefits violates the terms of the plan.").  Outside the Fourth Circuit, courts vary widely in their approaches to this question.  On one end of the spectrum, as emphasized by Defendant, the Ninth Circuit has held that "vague references to anonymous patients who allegedly assigned rights to [the plaintiff]" and the complaint's lack of "any plan terms that specify benefits that the defendants were obligated to pay but failed to pay . . . . cannot give rise to a 'reasonable inference that [the insurer] is liable' for medical care covered by the terms of ERISA plans to which [the plaintiff's] patients were participants or beneficiaries."  *Glendale Outpatient Surgery Ctr. v. United Healthcare Servs.*, 805 F. App'x 530, 531 (9th Cir. 2020).  Conversely, other courts recognize plaintiffs' difficulty obtaining plan documents at the early stages of litigation and accept pleading at a high level.  *See Abira Med. Lab'y v. Wellcare Health*, 2025 U.S. Dist. LEXIS 169348, at *6 (M.D. Fla. July 22, 2025) (noting that "an ERISA plaintiff does not need to plead details to which it has no access, as long as the facts alleged tell a plausible story"); *see also Abira Med. Lab'ys, LLC v. Blue Cross Blue Shield of Okla.*, 2025 U.S. Dist. LEXIS 181317, at *2 (W.D. Okla. Sep. 16, 2024).

The Court finds that the Fourth Circuit's high-level recitation in *Di Biase* supports adopting the latter position.  Defendant's arguments, that such cases are distinguishable because the plaintiffs in several instances were the actual plan members "with unequivocal, direct connections to their plans", are unavailing.  Simply because Plaintiff is asserting a derivative, assignment-based claim to the benefits of Defendant's insureds' plans does not render that claim any less valid— why else would derivative standing exist?  And as a policy matter, it would make no sense to hold that Plaintiff has standing to sue but also that it must quote specific language from the underlying ERISA plans in order to assert a viable claim, while having no right to obtain the insureds' ERISA-governed policy documents pre-discovery.  *See* 29 U.S.C. § 1132(c) (creating a right to request

information from an ERISA-governed plan administrator only for participants and beneficiaries).

Accordingly, because Plaintiff has pled that it has valid assignments of benefits from participants

in ERISA-governed plans and that Defendant wrongfully denied benefits to which Plaintiff is

eligible under the plans by arbitrarily, capriciously, and/or unreasonably denying or underpaying

on Plaintiff's submitted claims, the Court finds that Plaintiff has properly stated a claim under

ERISA § 502(a)(1)(B*).  Accord Deutsch v. lec Grp., Inc.* 2023 U.S. Dist. LEXIS 237216, at *15

(S.D.W. Va. Dec. 7, 2023) (declining to dismiss complaint for failing to identify the relevant plan

provisions with greater specificity).

    4. Pleading Administrative Exhaustion

       Defendant's final argument for dismissal of the ERISA claim is that Plaintiff "does not

assert facts sufficient to show that it satisfied the exhaustion requirements underlying each and

every ERISA claim" represented in Exhibit 1.  Mem. Supp. 19.  Defendant asserts that Plaintiff's

simple allegation that it exhausted administrative remedies is "wholly insufficient" to, on its own,

establish administrative exhaustion.  *Id.*  On this point, the Court agrees.  However, the Court also

agrees with Plaintiff, who points out that in ERISA cases, administrative exhaustion is an

affirmative defense and therefore not properly ascertainable on a 12(b)(6) motion to dismiss.  Resp.

Opp'n 11.

       "Although 'ERISA does not contain an explicit exhaustion provision,' 'an ERISA claimant

generally is required to exhaust the remedies provided by the employee benefit plan in which he

participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132.'"

*Wilson v. UnitedHealthcare Ins. Co*., 27 F.4th 228, 241 (4th Cir. 2022) (quoting *Makar v. Health

Care Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 82 (4th Cir. 1989)).  That said, "a failure to

exhaust may be excused when pursuing internal remedies would be futile."  *Id*. (internal quotations

omitted).

While the Fourth Circuit has not ruled on whether administrative exhaustion is something that must be pleaded in the first instance, as Defendant argues, or an affirmative defense with the onus of proof on the Defendant, as Plaintiff argues, its recognition of a futility carve-out strongly suggests that it would find the requirement to be an affirmative defense, in line with the positions of the Second, Third, and Fifth Circuits. *See Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 443–44 (2d Cir. 2006) (finding administrative exhaustion in the ERISA context to be a claim-processing rule rather than jurisdictional and thus "an affirmative defense subject to equitable considerations such as waiver, estoppel or futility"); *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279–80 (3d. Cir. 2007) (observing that "Congress has expressly provided for jurisdiction over ERISA cases in 29 U.S.C. § 1132(e). Neither that provision nor any other part of ERISA contains an exhaustion requirement. Thus, as a judicially-crafted doctrine, exhaustion places no limits on a court's adjudicatory power" and so holding it to be non-jurisdictional); *Crowell v. Shell Oil Co.*, 541 F.3d 295, 308–09 (5th Cir. 2008) (rejecting the premise that failure to exhaust administrative remedies is a jurisdictional bar to an ERISA claim).

With administrative exhaustion properly categorized as an affirmative defense, Fourth Circuit law dictates "that a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint," is not the proper vehicle for considering such arguments. *Goodman v. PraxAir, Inc*., 494 F.3d 458, 464 (4th Cir. 2007); *accord West v. Cont'l Auto., Inc.,* 2016 WL 6543128, at *1 (W.D.N.C. Nov. 2, 2016) ("ERISA plaintiffs are not obligated to plead exhaustion or futility because failure to exhaust is an affirmative defense that must be pled and proven by the defendant."). As such, the Court will not dismiss Plaintiff's ERISA claim for failure to exhaust administrative remedies at this stage of the litigation. And, otherwise having found Plaintiff to have stated a plausible claim for denial of ERISA benefits, the Court will deny the Motion to Dismiss with respect to Count One.

12

**B. State Law Claims**

   1. <u>Breach of Contract (Count Two)</u>

   In Count Two, Plaintiff asserts a breach of contract claim against Defendant for those unpaid or underpaid benefits claims reflected in Exhibit One for which the underlying plan was not an ERISA-governed health plan.  Compl. ¶¶ 39–40.  Plaintiff posits that, because the AOBs executed by Defendants' insureds transferred to Plaintiff the insureds' right to payment under a health plan and their right to pursue such payment, a valid and binding contract existed between Plaintiff and Defendant for those benefits.  *Id.* ¶¶ 37, 39.  And, pursuant to such contract, Plaintiff was entitled to have its claims "processed and paid promptly by Defendant."  *Id.* ¶ 39.

   Defendant insists Count Two fails to state a claim because it "fails to allege any terms of any health plan at all, let alone facts suggesting [Plaintiff's] services were covered under the plans or that [Defendant's] payment breached the plan terms."  Mem. Supp. 20.  Defendant argues that the Complaint is critically deficient because it fails to allege that Plaintiff rendered covered services or the amount that was due for those services, and it fails to include or cite to any contract or contract provision allegedly breached by Defendants' claim denials.  *Id.*  Thus, according to Defendant, there are no facts on the face of the Complaint from which a factfinder could plausibly conclude that Plaintiff was entitled to payment for any particular claim.  *Id.*

   To determine whether Plaintiff has adequately stated a breach of contract claim, the Court applies the substantive law of the forum state—here, Virginia.  28 U.S.C. § 1632.   In Virginia, to state a breach of contract claim, a plaintiff must plausibly plead:  "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."  *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006).  The Court finds that Plaintiff has pled sufficient facts to state a plausible claim for relief, when assessing the above-required elements.

With respect to the first prong, the Complaint alleges that Plaintiff performed laboratory testing on behalf of Defendants' insureds, Compl. ¶ 15, and attaches Exhibit 1 detailing the (HIPAA-anonymized) claims submitted to Defendant for such testing, *see id.* ¶ 18 n.1. The Complaint further alleges that, pursuant to each insured's health plan, the performance of such testing, coupled with the AOBs executed by Defendant's insureds, gave rise to payment obligations owed by Defendant to Plaintiff for the services rendered to each of the patients listed in Exhibit 1. *Id.* ¶¶ 19, 38–39. In support of dismissal, Defendant argues that, by not alleging the actual terms giving rise to its supposed obligation to pay, there is nothing in the Complaint to plausibly suggest that Plaintiff's services were in fact covered under the insureds' health plans and thus that a legally enforceable obligation existed. Mem. Supp. 20.

Although Defendant is correct that having the contract terms before the Court would certainly cement the analysis one way or another, common sense renders Plaintiff's allegations sufficiently plausible to survive a 12(b)(6) challenge. One of the most baseline features of a health insurance plan is that it covers, at least in part, the testing requisitioned by an individual's healthcare provider. Thus, the allegation that Plaintiff performed testing services for Defendants' insureds at the request of the insureds' healthcare providers certainly gives rise to a plausible inference that Defendant owed its insureds coverage (i.e., payment) for such testing. And the principles of assignment dictate that this legal obligation passed to the benefit of Plaintiff. *See Pollard & Bagby, Inc. v. Pierce Arrow, L.L.C.*, 521 S.E.2d 761, 763 (Va. 1999) (when there is an assignment of contract rights, "the assignee obtains [its] rights from the assignor and, thus, stands in the shoes of the assignor and acquires the same rights and liabilities as if [it] had been an original party to the contract"); *Women in Military Serv. For Am. Mem. Found. v. Hartford Fire Ins. Co.*, 21 F. App'x 186, 192 (4th Cir. 2001) (reciting the same). Thus, the first prong is satisfied.

14

Defendant's challenge to the second prong is much the same as its challenge to the first—that, absent the specific plan documents giving rise to the purported contractual obligations between it and Plaintiff, there can be no plausible finding that nonpayment or underpayment was a breach of the underlying health insurance plan. Mem. Supp. 20. This again belies common sense and the lived experience of almost every American. Rather, it is entirely plausible that a health insurance company's "arbitrary, capricious, and unreasonable" and otherwise "groundless" refusal to pay for services, Compl. ¶¶ 34, 40, may constitute a breach of the underlying plan. And while Defendant asserts that Virginia law requires specific allegations of the terms of the contract that were purportedly breached, *e.g.*, Reply 9, Defendant cites nothing for this proposition but two Eastern District of Virginia cases that do not, in fact, rest such conclusions on citations to Virginia law, *see* Mem. Supp. 20. Thus, the Court is not persuaded by Defendant's efforts to heighten the pleading standard applicable to Plaintiff's breach of contract claim and so finds the second prong to be satisfied. *Accord Bluecross Blueshield of Tenn., Inc.*, 2025 U.S. Dist. LEXIS 132756, at *13–14 (finding that a plaintiff is not required to attach a contract as an exhibit to their breach-of-contract complaint, particularly when he may not have access to the agreement pre-discovery).

Finally, as to the third prong, Plaintiff has clearly alleged that it suffered damages insofar as it was deprived of "thousands of dollars to which it is rightfully entitled," ultimately amounting to actual damages of $2,898,730. Compl. ¶¶ 22, Prayer for Relief. With all three necessary elements so pleaded, the Court finds that Plaintiff has set forth the necessary factual allegations to state a plausible claim for relief. Defendant's Motion to Dismiss will therefore be denied with respect to Count Two.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing (Count Three)

In Count Three, Plaintiff asserts that with the valid and binding agreement between Plaintiff and Defendant comes a duty of good faith and fair dealing with regard to the agreement's

performance and enforcement.  Compl. ¶¶ 44–45.  Plaintiff alleges that Defendant's failure and/or refusal to respond to or pay claims breached the implied covenant of good faith and fair dealing. *Id*. ¶ 46.  Defendant responds that there is no independent cause of action for breach of implied covenant of good faith and fair dealing when a breach of contract claim is also asserted, nor can there be a breach when there is no contract.  Mot. to Dismiss 21.  The Court has already determined that Plaintiff has sufficiently alleged the existence of a contract, and that Defendant's actions, as alleged, plausibly constitute a breach thereof.  This leaves only Defendant's first argument, that a claim for breach of the implied covenant of good faith and fair dealing cannot stand when a claim for breach of contract is also asserted.

"In Virginia, 'every contract contains an implied covenant of good faith and fair dealing.'" *Brainchild Surgical Devices, LLC v. CPA Glob. Ltd*., 144 F.4th 238, 251 (4th Cir. 2025) (quoting *Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 345 (4th Cir. 2013)).  "Under that implied covenant, when a party exercises contractual rights, it may not do so dishonestly or in bad faith." *Id*.  "A breach of the implied duty of good faith and fair dealing must be raised in a claim for breach of contract, as opposed to a claim in tort."  *Stoney Glen, LLC v. S. Bank & Tr. Co*., 944 F. Supp. 2d 460, 465 (E.D. Va. 2013).  "In Virginia, the elements of a claim for breach of an implied covenant of good faith and fair dealing are (1) a contractual relationship between the parties, and (2) a breach of the implied covenant."  *Enomoto v. Space Adventures, Ltd*., 624 F. Supp. 2d 443, 450 (E.D. Va. 2009).  Generally, plaintiffs properly plead their claim when they allege "bad faith and unfair dealing."  *Id*. at 451.

Here, Defendant is correct that Plaintiff asserts the exact same allegations as the basis for its breach of contract claim as it does for its breach of the implied covenant of good faith and fair dealing claim—which is, per the law cited above, simply another form of breach of contract claim.  However, those allegations do also satisfy the elements of a claim for breach of an implied

covenant of good faith and fair dealing, because they allege (1) a contract, and (2) a breach of the implied covenant by way of Defendant's bad faith refusal to respond to properly submitted claims and/or refusing to pay or underpaying claims for groundless reasons.  Compl. ¶ 46.  Because Plaintiff has not failed to state a claim, dismissal pursuant to 12(b)(6) is not proper, and the Court will deny the Motion to Dismiss as to Count Three.  That being said, if Plaintiff's express breach of contract and breach of the implied covenant claims remain factually duplicative by the summary judgment stage, Plaintiff will not be able to pursue both.  *See Brainchild*, 144 F.4th at 252 (noting, "[w]e see nothing in Virginia law that permits a claim for breach of the implied covenant of good faith and fair dealing that simply duplicates a claim for an express breach of the contract," and affirming the summary judgment dismissal of the implied covenant claim); *accord USI Ins. Servs., LLC v. Ellis*, 2023 U.S. Dist. LEXIS 33020, at *6, 15 (E.D. Va. Feb. 27, 2023) (acknowledging the identical allegations underlying an express breach of contract claim and a claim for breach of the implied warranty of good faith and fair dealing but emphasizing the separate *theories* of breach and, because the facts alleged plausibly supported the claims asserted, denying the motion to dismiss while forecasting that the various breach of contract claims would "boil down" by a later stage in the litigation).

      3. <u>Actual and Constructive Fraud (Count Four)</u>

Finally, in Count Four, Plaintiff claims that "Defendant's representatives . . . represented to Plaintiff that the patients/insureds were all covered by policies of insurance issued by Defendant and that Defendant would pay for the services to be rendered by Plaintiff to Defendant's insureds." Compl. ¶ 50.  Simultaneously, Plaintiff alleges that "Defendant's course of conduct constituted a representation that it would continue to pay for [the] Laboratory Testing Services [sic] rendered by Plaintiff." *Id.* ¶ 52.  The misrepresentations allegedly manifested when Defendant did not pay and/or underpaid for the submitted claims.  *Id.* ¶ 52.  These misrepresentations were of material

fact, says Plaintiff, and were made "intentionally and knowingly or innocently or negligently[,]" with the intent that Plaintiff rely upon them. *Id.* ¶ 51. As a result, Plaintiff alleges it was induced to adversely change its position insofar as it continued to provide testing services, despite the ongoing non- and underpayment, because it believed it would be compensated for services rendered, and it suffered damages as a result. *Id.* ¶¶ 53, 57. Defendant argues that this claim should be dismissed because it fails to meet the pleading standard for fraud claims under Federal Rule of Civil Procedure 9(b), and that, specifically, Plaintiff does not plausibly allege that "it ever communicated with [Defendant] prior to providing testing services." Mem. Supp. 22.

In Virginia, a claim for actual fraud requires allegations of "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005) (citations omitted). Alternatively, "to state a claim of constructive fraud 'the plaintiff is only required to plead that the false representation was made innocently or negligently, while all other elements [of actual fraud] remain the same.'" *Cormier v. Atl. Law Grp.*, 2012 U.S. Dist. LEXIS 110885, at *13 (E.D.V.A. Aug. 7, 2012) (quoting *Sales v. Kecoughtan Hous. Co.*, 690 S.E.2d 91, 94 (Va. 2010)).

In addition to satisfying the foregoing, a claim for fraud brought in federal court must also satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Baker v. Elam*, 883 F.Supp.2d 576, 580 (E.D. Va. 2012). Specifically, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Particularity means inclusion of details about "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison*

*v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (noting that these facts are often "referred to as the 'who, what, when, where, and how' of the alleged fraud")).

On this claim, the Court finds for Defendant.  Specifically, Plaintiff's general, conclusory, and anonymous allegations regarding its course of dealing with Defendant and/or Defendant's "representatives" are insufficient to state a claim for fraud under either Virginia law or Rule 9(b).  *Accord Abira Med. Labs., LLC v. Caresource*, U.S. Dist. LEXIS 208977, at *8–9 (S.D. Ohio Nov. 18, 2024) (finding that the plaintiff's fraud pleading lacked sufficient particularity and noting the lack of time and place allegations); *Abira Med. Labs., LLC v. State Farm Mut. Auto. Ins. Co.*, 2024 U.S. Dist. LEXIS 112412, at *10 (D.N.J. June 26, 2024) (dismissing without prejudice fraudulent misrepresentation claims that lacked "sufficient factual matter allowing [the] [c]ourt to find that there was ever a misrepresentation or a clear and definite promise").  The Court will accordingly grant the Motion to Dismiss with respect to Count Four.

## C.  Improper Joinder

Lastly, Defendant argues that Plaintiff impermissibly combines 2,170 claims for services rendered to over 1,000 individual patients.  Mem. Supp. 23–27.  Defendant asserts that it is unfeasible to continue the litigation as currently pled because it will need to "analyze and argue defenses for an alleged 2,170 separate claims based on hundreds [of] different health benefits plans."  *Id.* at 26.  Defendant further proffers that it is likewise in the Court's interest to force Plaintiff to sever its claims, else the Court faces the task of "review[ing] each and every plan to determine the standard of review,[] whether there are applicable anti-assignment or timeliness provisions, and whether exhaustion requirements were met per the plans, as well as the administrative record for every single claim."  *Id.* at 23.  While the Court appreciates Defendant's concern for its case management capabilities, the Court is unpersuaded by Defendant's arguments.

19

Federal Rule of Civil Procedure 18 provides that "[a] party asserting a claim, counterclaim crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." This freedom to assert as many claims as the plaintiff chooses is in line with the Supreme Court's oft quoted pronouncement that "the plaintiff is the master of the complaint." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005). The Supreme Court has also decreed that the Federal Rules of Civil Procedure permit "the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

Here, Plaintiff has asserted that Defendant engaged in a course of conduct whereby it arbitrarily, capriciously, unreasonably, and wrongfully avoided paying—either in whole or in part—on the benefits claims asserted by Plaintiff, and in doing so breached ERISA and the underlying contracts. *E.g.*, Compl. ¶¶ 32–34, 40. In support of that assertion, Plaintiff points to 2,170 instances of claims submitted by Plaintiff to Defendant, over a quarter of which received no response from Defendant. Compl. Ex. 1. And while Exhibit 1 does not clarify the ultimate outcome of each of the claims that were assigned claim numbers by Defendant, the Complaint asserts that "for those claims in which Defendant did choose to respond, [Defendant] regularly refus[ed] to pay and/or underpa[id] . . . for reasons that were (and remain) entirely groundless." Compl. ¶ 40. While 2,170 is certainly a large number of claims to parse through, both for the parties in discovery and the Court or other factfinder at a later stage, that does not render them— or Defendant's underlying, allegedly improper approach to handling each such claim—any less related. And in its arguments for severance, Defendant does not acknowledge the alternative to permitting Plaintiff to bring all its claims together, i.e., that the Court would be inundated with duplicative, claim-by-claim litigation.

20

The cases Defendant cites in support of its position for severance are unpersuasive. In both instances, the courts applied *party* joinder rules and principles to assess whether to permit the plaintiff to proceed on the basis of the proffered medical claims. *See DaSilva Plastic & Reconstructive Surgery, P.C. v. Empire HealthChoice HMO, Inc.*, 2025 U.S. Dist. LEXIS 9484, at *31–32 (E.D.N.Y. Jan. 17, 2025); *Gordon Surgical Grp., P.C. v. Empire Healthchoice HMO, Inc.*, 2024 U.S. Dist. LEXIS 104980, at *5 (S.D.N.Y. June 12, 2024) (summarizing the underlying Report & Recommendation's review of "the rules of joinder under Federal Rules of Civil Procedure 18, 19, and 20"). The Court finds no basis in law for applying a similar approach to the present discussion of *claim* joinder, which is explicitly governed by Rule 18 alone.

Accordingly, the Court will not sever and dismiss the claims underlying Plaintiff's Complaint simply because Defendant is daunted by the discovery process. Plaintiff is the master of its Complaint, and as such Plaintiff is entitled to pursue its claims against Defendant, as a whole. Defendant's request for severance will be denied.

## V. CONCLUSION

For the reasons described herein, the Court will deny the Motion to Dismiss with respect to Counts One through Three, but will grant the Motion with respect to Count Four. The Court will deny Defendant's request that the Court sever Plaintiff's claims.

An appropriate order will issue.

_____ /s/
Roderick C. Young
United States District Judge

Date: <u>February 3, 2026</u>
Richmond, Virginia

21